IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DIANN TIPPINS and GENEVA HEARD, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CITY OF DADEVILLE, ALABAMA, )<br>MAYOR MIKE INGRAM, in his )<br>capacity as Mayor of Dadeville, and )<br>SHARON HARRELSON, in her capacity )<br>as an agent of the City of Dadeville, )<br>)<br>Defendants. ) | CASE NO. 3:13-CV-368-WKW<br>[WO] |

## **MEMORANDUM OPINION AND ORDER**

This case involves federal-law claims and supplemental state-law claims. Before the court is Defendants' Motion to Dismiss (Doc. # 5), which the parties have fully briefed (Docs. # 15, 17). After careful consideration of the arguments of counsel, the appropriate law, and the allegations set forth in the Complaint, the court finds that the motion is due to be granted in part and denied in part.

### I. JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over Plaintiffs' federal-law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367. Personal jurisdiction and venue are uncontested.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff."  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 663 (alteration in original) (citation omitted).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  The standard also "calls for enough facts to raise a reasonable expectation that discovery will

reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

### III.  BACKGROUND

**A.    The Parties**

Plaintiff Diann Tippins ("Tippins") is a black female and a resident of Tallapoosa County, Alabama; she grew up in Dadeville, Alabama. Plaintiff Geneva Heard ("Heard") is a black female and a resident of Dadeville. Defendant Mike Ingram ("Ingram") is a white male and the mayor of the City of Dadeville. Defendant Sharon Harrelson ("Harrelson") is a white female and an employee of the City of Dadeville. Defendant City of Dadeville ("City") is a municipality located in Tallapoosa County, Alabama. Plaintiffs sue Mayor Ingram and Ms. Harrelson in their official capacities only.

**B.    Facts**

On May 30, 2011, Ms. Tippin's 19-month-old son, Ian Tippins, died as a result of accidental drowning. Ms. Heard was Ian's godmother. On June 1, 2011, Plaintiffs went to Dadeville City Hall to secure a burial plot in the Dadeville City Cemetery. Plaintiffs spoke with Ms. Harrelson, an employee of the City who arranges for the purchase of burial plots in the City Cemetery. Ms. Harrelson accompanied Plaintiffs to the cemetery so they could choose a burial plot.

Plaintiffs allege that there are two sections of the City Cemetery – one that is well kept where whites are buried and the other side that is unkempt and overgrown, where blacks are buried. A wall and a wire fence separate the two sections. Plaintiffs requested a plot on the well-kept, white side of the cemetery. Ms. Harrelson informed Plaintiffs that there were no available plots on the well-kept side, even though Plaintiffs allege that they saw various vacant plots. Plaintiffs allege that Ms. Harrelson told them that all the plots had been sold and the only available plots were on the overgrown, black side.

The funeral was scheduled for June 4, 2011. Because Plaintiffs could not secure a plot on the well-groomed side of the cemetery, they "were forced to purchase a plot in Hillview Memorial Park, a cemetery in Alex City." (Doc. # 1, at 4.) Plaintiffs allege that the Hillview plot was much more expensive and "was not near the baby's godmother, Geneva Heard, or her people or near where Diann Tippins considers home." (Doc. # 1, at 4.)

At some point, Ms. Harrelson called Plaintiffs to say that the family could purchase a plot in the City Cemetery on the well-kept side. It is not clear from the allegations whether this phone call was made before or after the funeral. Plaintiffs allege that during the phone call, Mayor Ingram could be heard in the background referring to the "black side" and the "white side" of the cemetery. (Doc. # 1, ¶ 12.)

On September 30, 2011, Plaintiffs filed a Notice of Claim with the City. Approximately twenty months later on May 30, 2013, Plaintiffs filed this action. The Complaint sets forth six counts. Count One alleges that Defendants discriminated against Plaintiffs and denied them accommodations on the basis of race by "refus[ing] to allow them to purchase a burial plot on the 'white side' of the cemetery . . . ." (Doc. # 1, at 5.) Plaintiffs cite "the 1964 Civil Rights Act, 42 U.S.C. § 2000" and "Title II" as the federal statutory sources of their claim in Count One.

Count Two alleges that Mayor Ingram and Ms. Harrelson "conspired . . . for the purpose of depriving, either directly or indirectly, Plaintiffs . . . , who are African-Americans and part of a protected class, of the equal protection of the laws or of equal privileges and immunities," in violation of 42 U.S.C. § 1985. (Doc. # 1, at 6–7.)

Counts Three, Four, Five, and Six are state-law claims. Count Three is a claim for fraud. Count Four alleges a conspiracy. Count Five alleges an intentional failure to provide services by a public utility. Count Six is a claim for the tort of outrage. Plaintiffs request compensatory damages, punitive damages, and a declaratory judgment.

## IV.  DISCUSSION

The discussion proceeds in two parts.  Part A addresses Plaintiffs' federal-law claims (Counts One and Two).  Part B addresses Plaintiffs' state-law claims (Counts Three, Four, Five, and Six).

**A.** <u>**Federal-Law Claims**</u>

    **1.**    *Eleventh Amendment Immunity*

Defendants raise Eleventh Amendment immunity as a bar to Plaintiffs' federal-law claims for monetary damages against Mayor Ingram and Ms. Harrelson in their official capacities.  They have not cited any authority to support their position, however, that a city official is entitled to Eleventh Amendment immunity.  *See Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1314 (11th Cir. 2005) ("[T]he bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal corporations." (citation and internal quotation marks omitted)).  Accordingly, the court declines to dismiss the official-capacity claims on the basis of Eleventh Amendment immunity.

    **2.**    *Count One:  42 U.S.C. § 2000a*

Defendants argue that Count One is "deficient" because it "generically refers to 42 U.S.C. § 2000 without any specific reference or basis."  (Doc. # 5, at 3.) They further contend that to the extent that Count One alleges a violation of Title

II, it contains no "allegations of disability." (Doc. # 5, at 3.) Defendants' latter argument presumes that Count One asserts a claim under Title II of the Americans with Disabilities Act. Plaintiffs clarify in their brief opposing the motion to dismiss, however, that Count One alleges racial discrimination based on the denial of public accommodations pursuant to 42 U.S.C. § 2000a. (Doc. # 5, ¶ 9.)

Count One alleges a violation of "42 U.S.C. § 2000" predicated on allegations that "Defendants' refusal to allow them to purchase a burial plot on the 'white side' of the cemetery violated [their] right to be free of discrimination in accommodations based on race." (Doc. # 1, ¶ 16.) The statutory citation is incorrect as Title 42 does not contain a "§ 2000." Title 42 does contain, a "§ 2000a," which grants all people the right to "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a. Although the Complaint would have benefitted from proofreading and editing, the court will not dismiss Count One on the basis of a typographical error where it is clear that the allegations are an attempt to bring a claim under § 2000a's prohibitions. Accordingly, Defendants' motion to dismiss Count One on the ground that the statutory citation is "deficient" is due to be denied.

### 3. *Count Two: 42 U.S.C. § 1985*

Defendants argue that Plaintiffs' § 1985 conspiracy claim in Count Two is barred by the intracorporate conspiracy doctrine,[1] relying on *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010). Plaintiffs respond that Defendants' actions fall under an exception to the doctrine, relying on *Dickerson v. Alachua County Commission*, 200 F.3d 761, 769 (11th Cir. 2000). Defendants have the better argument.

In *Grider*, the Eleventh Circuit held that the plaintiff's 42 U.S.C. § 1983 conspiracy claim failed based on the intracorporate conspiracy doctrine, which "'holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy.'" 618 F.3d at 1261 (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc)). The intracorporate conspiracy doctrine also applies to § 1985(3) conspiracy claims. *Dickerson*, 200 F.3d at 767; *see also Denney v. City of Albany*, 247 F.3d 1172, 1190–91 (11th Cir. 2001) (holding that the intracorporate conspiracy doctrine barred the plaintiffs' § 1985(3) conspiracy claim where "the only two conspirators identified . . . [were] both City employees" and "no outsiders [were] alleged to be involved"). In *McAndrew*, the Eleventh

---

[1] The Complaint does not specify upon which subsection of § 1985 Plaintiffs rely, but § 1985(3) offers the only legal theory potentially applicable. In any event, Plaintiffs fail to allege any specific facts that would support a conspiracy claim under any other subsection of § 1985.

Circuit explained that under this doctrine, "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."  206 F.3d at 1036; *see also Denney*, 247 F.3d at 1190–91.  "The doctrine applies to public entities such as [a city] and its personnel."  *Denney*, 247 F.3d at 1190; *see also Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010) (holding that the intracorporate conspiracy doctrine barred a § 1983 conspiracy claim against a county employee); *Dickerson*, 200 F.3d at 767–68 (concluding that the intracorporate conspiracy doctrine barred the plaintiff's § 1985(3) conspiracy claim for interference with his civil rights).

In *Dickerson*, the case cited by Plaintiffs, the Eleventh Circuit also reviewed cases in other circuits that have applied exceptions to the intracorporate conspiracy doctrine.  The Eleventh Circuit held that because none of the potential exceptions would apply based on the facts before it, it did not need to "reach the issue of whether to adopt them in this circuit."  *Dickerson*, 200 F.3d at 770.  Accordingly, the court held that the plaintiff could not establish the existence of the alleged conspiracy based on the intracorporate conspiracy doctrine.  *Id*. at 769–70.

Plaintiffs nonetheless contend that here the court should adopt and apply an exception to the intracorporate conspiracy doctrine.  Plaintiffs argue that where "employees engage in a series of discriminatory acts over a significant period of time . . . [,] the employees fall under an exception to the intra corporate [sic]

9

conspiracy doctrine." (Doc. # 15, ¶ 14.) Plaintiffs have not alleged a series of discriminatory acts over a significant period of time. Plaintiffs allege one act – the denial of the right to buy a burial plot on the white side of the cemetery. Even if the Eleventh Circuit did adopt the exception upon which Plaintiffs rely, Plaintiffs allege no facts to support its application. Accordingly, Defendants' motion to dismiss Count Two based on the intracorporate conspiracy doctrine is due to be granted.

### 4. *A Word About 42 U.S.C. § 1983*

In an apparent abundance of caution, Defendants make several arguments for the dismissal of any 42 U.S.C. § 1983 constitutional claim in the Complaint. The court need not address these arguments, however, because there is no "short and plain statement" of a § 1983 claim anywhere in the Complaint, *see* Fed. R. Civ. P. 8(a), and Plaintiffs do not contend otherwise.

The Complaint contains six counts. The two federal-law claims are delineated in Count One and Count Two. Count One, as discussed above, alleges a violation of § 2000a, and Count Two alleges a conspiracy claim under § 1985(3). These two counts do not allege or attempt to allege a constitutional violation under color of law pursuant to § 1983. The remaining counts are brought under state law.

The only arguably attempted reference to § 1983 is contained in the Complaint's jurisdictional statement, which includes a reference to "28 U.S.C. §

1983." Title 28 does not contain a § 1983, and Plaintiffs cannot state a claim for relief by a bare reference to a statutory provision in their jurisdictional statement. Other than quoting (*albeit* without any analysis) a single decision that references § 1983 in an apparent rebuttal to one of Defendants' arguments, Plaintiffs make no argument in their opposition brief that they are relying on § 1983 as a basis for any claim in the Complaint.[2] Accordingly, Defendants' motion to dismiss any § 1983 count is due to be denied as moot.

**B.     State-Law Claims**

    **1.     *Official-Capacity Claims***

Defendants argue that the official-capacity, state-law claims against Mayor Ingram and Ms. Harrelson – as agents of the City – are due to be dismissed on the rationale that pleading a claim against the City's agents in their official capacities simply is another way of pleading a claim against the City.

This argument finds support in *Dickinson v. City of Huntsville*, 822 So. 2d 411 (Ala. 2001). In *Dickinson*, the Alabama Supreme Court explained that the city's mayor "is, in her official capacity, within the line and scope of her office, the agent of the City, through whom the City acts." *Id*. at 415. "Thus, to sue the mayor in her official capacity is simply another way of suing the City." *Id*. Accordingly, the Alabama Supreme Court held that the trial court did not err in

---

[2] Plaintiffs could have avoided the present confusion by omitting the incorrect statutory reference to "28 U.S.C. § 1983."

substituting the city for the mayor. *See id.*; *see also Todd v. Kelley*, 783 So. 2d 31, 38 n.1 (Ala. Civ. App. 2000) ("Because we need not separately address any claims against the city officials in their official capacities, we will refer only to the City and not to the officials in their official capacities when addressing [the plaintiff's] substantive claims"); *Hinson v. Holt*, 776 So. 2d 804, 810 (Ala. Civ. App. 1998) ("Claims against officers in their official capacity are 'functionally equivalent' to claims against the entity they represent.") (citation and quotations omitted).

In this case, the City is a defendant and, thus, under the rationale of *Dickinson*, Mayor Ingram's and Ms. Harrelson's presence in their official capacities is unnecessary and, in fact, redundant. Plaintiffs do not argue any basis for maintaining the official-capacity claims alongside the claims against the City. Accordingly, all state-law claims against Mayor Ingram and Ms. Harrelson in their official capacities are due to be dismissed. The remaining analysis thus relates only to the state-law claims against the City.

### 2. *Counts Three, Four, Five, and Six*

Counts Three through Six allege fraud, conspiracy, intentional failure to provide a service by a public utility, and outrage, respectively. Each of these acts is predicated upon Mayor Ingram's and Ms. Harrelson's intentional acts. Defendants argue that the City is immune from liability on these four counts on the basis of § 11-47-190 of the Alabama Code, which "absolves a municipality from

liability for the intentional torts of its agents." *Altmayer v. City of Daphne*, 613 So. 2d 366, 369 (Ala. 1993) (citing *Scott v. City of Mountain Brook*, 602 So. 2d 893, 895 (Ala. 1992)). Plaintiffs make no contrary argument.

Indeed, § 11-47-190 makes Alabama municipalities immune from liability for the alleged willful, wanton, and malicious torts of their employees. In *Walker v. City of Huntsville*, 62 So. 3d 474 (Ala. 2010), the Alabama Supreme Court held that the plaintiff's intentional tort claims against the City were "barred under § 11-47-190, which limits the liability of a municipality to injuries 'suffered through the neglect, carelessness, or unskillfulness of some agent,'" *Id.* at 501 (quoting Ala. Code § 11-47-190). Here, Plaintiffs base their claims against the City on the alleged *intentional* conduct of Mayor Ingram and Ms. Harrelson, and thus, the City cannot be held liable. For these reasons, Defendants' motion to dismiss Counts Three through Six is due to be granted.

## V. CONCLUSION

It is therefore ORDERED that the Motion to Dismiss (Doc. # 5) is GRANTED in part and DENIED in part as follows:

(1) DENIED as to Count One;

(2) GRANTED with prejudice as to Count Two;

(3) DENIED as moot as to the argument that the Complaint pleads a claim under 42 U.S.C. § 1983;

(4)  GRANTED with prejudice as to the state-law claims brought against Ingram and Harrelson in their official-capacities (Counts Three through Six); and

(5)  GRANTED with prejudice as to Counts Three, Four, Five, and Six brought against the City.

DONE this 19th day of March, 2014.

                                                /s/ W. Keith Watkins
                                  CHIEF UNITED STATES DISTRICT JUDGE